THE CITY OF DECATUR, Plaintiff-Appellee, v. WASTE HAULING, INC., Defendant-Appellant.

Fourth District   No. 4—86—0754

Opinion filed June 8, 1987.

Stephen J. Allison, of Allison & Allison, P.C., of Decatur, for appellant.

John W. Couter, Assistant Corporation Counsel, of Decatur, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Defendant Waste Hauling, Inc., appeals from its conviction under a Decatur, Illinois, ordinance which prohibits refuse haulers in the city from collecting garbage at residences outside the district to which they have been assigned. Defendant asserts the ordinance is unconstitutional because it creates an irrational distinction between "residential" and "commercial" refuse pick-up accounts and because it acts to deprive defendant of a vested property interest. Defendant also challenges the validity of the Decatur ordinance under the statute which authorizes a municipality to contract for refuse removal services. Further, defendant asserts the trial court erred in striking its affirmative defenses although they had previously been addressed in ruling on defendant's motion to dismiss the ordinance prosecution. We affirm.

The city of Decatur (city) initially filed an information charging defendant with violating section 22(c), chapter 55, Decatur City Code, on October 7, 1985. The information alleged defendant had "removed refuse from *** a location outside the geographical boundaries of the area assigned to his license." Defendant responded with a motion to dismiss the information, which raised the constitutional arguments pursued on appeal. In support of this motion, defendant attached the affidavit of C. Dean Perry. Perry averred he was the owner of the three-dwelling building on William Street from which defendant had allegedly removed refuse and that defendant had removed refuse from this building since before the ordinance was enacted. Perry also stated defendant was the sole refuse-removal service used for apartment and commercial buildings owned by Perry within the city of Decatur.

After the circuit court denied defendant's motion to dismiss, defendant answered and raised the constitutional arguments as affirmative defenses. On its own motion, the trial court struck these defenses because they had previously been rejected in ruling on defendant's motion to dismiss.

A bench trial subsequently took place, at which the parties stipulated the residence in question was not in the defendant's service area and contained three apartment units. The city then presented testimony from Steven L. Trimby, an employee of the refuse hauler assigned to the service area containing the building from which defend-

ant had allegedly removed garbage. Trimby testified he had observed a man in a truck marked with the defendant's logo removing refuse from the William Street building on several occasions. Following this evidence, the court found defendant guilty of removing garbage from a residential building outside its service area and imposed a fine of $125.

The ordinance in question defines "residential" in the following terms:

> "Premises occupied by six or fewer living units. Routes predominantly serving residential premises. Areas predominantly consisting of residential premises. Refuse produced on residential premises." (Decatur City Code, ch. 55, sec. 2.)

The code also provides for residential service areas based upon geography and specifies no residential area shall be included within the boundaries of more than one licensing area. (Decatur City Code, ch. 55, secs. 24, 25.) No hauler, other than the owner or occupier of the property, may remove refuse from any premises without a license. Decatur City Code, ch. 55, sec. 21.

Defendant's initial argument apparently contends the ordinance violates equal-protection guarantees because it defines "residential premises" as all buildings containing six or fewer living units. By its terms, this definition includes premises operated for strictly commercial purposes and premises operated by landlords whose combined holdings total more than six living units, albeit in different buildings. Thus, defendant concludes, the city's definition of residential premises to include all buildings containing six or fewer living units is irrational.

■ An ordinance which seeks to promote public health, safety, or welfare will withstand challenge on equal-protection grounds if it makes classifications which are reasonably calculated to promote such public interests. (*People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.* (1986), 114 Ill. 2d 252, 500 N.E.2d 34; *City of Chicago v. Vokes* (1963), 28 Ill. 2d 475, 193 N.E.2d 40.) "The reasonableness of a police regulation is not necessarily what is best but what is fairly appropriate under all circumstances." (*City of Chicago v. Vokes* (1963), 28 Ill. 2d 475, 479, 193 N.E.2d 40, 44.) A classification is not unconstitutional because it lacks mathematical nicety or in practice results in some inequity. *City of Chicago v. Vokes* (1963), 28 Ill. 2d 475, 193 N.E.2d 40.

The city defends the present classification on grounds it works to limit the numbers of large, heavy garbage trucks present in primarily residential neighborhoods. By limiting the number of refuse haulers in

such areas, the city continues, it is limiting congestion, noise, and damage to residential streets which were not built to withstand heavy truck traffic.

■ We conclude the city has advanced valid reasons for the ordinance at issue. Likewise, the classification of "residential" property created by the ordinance is rationally related to promoting the public interest in limiting noise, congestion, and street damage in primarily residential neighborhoods. Although, as defendant suggests, the city could define "residential" in a manner more favorable to defendant's business, equal protection does not require such action.

■ Defendant next asserts the ordinance unconstitutionally deprives it of a property interest because the ordinance forbids defendant to haul refuse from an area in which it was formerly permitted to conduct its business.

Defendant cites *Tugman v. City of Chicago* (1875), 78 Ill. 405, for the proposition that government cannot prohibit one person from conducting business in a particular geographical area while simultaneously permitting other persons to conduct that same type of business in the region. In *Tugman*, an ordinance prohibited the defendant from establishing a slaughterhouse in a particular neighborhood, but allowed existing slaughterhouses to continue operation. Finding this regulation unreasonable, the *Tugman* court held the law invalid, apparently on constitutional grounds. Although *Tugman* has not been expressly overruled, the law has clearly evolved to permit land-use regulation of the type held improper in *Tugman*. See, *e.g., Village of Oak Park v. Gordon* (1965), 32 Ill. 2d 295, 205 N.E.2d 464.

Regardless of *Tugman*'s continued viability, defendant did not prove the existence of any property right which was altered by the ordinance. At best, defendant has shown a past practice of hauling refuse from the William Street property, as averred in the Perry affidavit. This affidavit falls woefully short of proving existence of either a legally binding contract between defendant and Perry or a property right owned by defendant. Defendant's claim the city ordinance impaired a property right is without merit.

■ Defendant next argues the city is without power to exclude any refuse hauler from the city of Decatur unless the city has an exclusive contract with another hauler and has enacted an ordinance specifically approving the contract. Section 11—19—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 11—19—1) permits municipalities to contract for refuse collection and disposal for periods of up to 30 years. The ordinance at issue permits only licensed haulers to engage in the business of removing refuse from the city of

Decatur. In order to obtain and keep a license, a hauler must comply with numerous terms regarding price, equipment, and method of pickup. When a refuse hauler applies for, receives, and accepts a license from the city, a contractual relationship arises which excludes all other refuse haulers from a specified region of the city. Since defendant concedes the ordinance was properly enacted, the terms of the license would be enforceable in favor of the licensees.

Defendant's reliance upon this court's decision in *City of Tuscola v. D & B Refuse Service, Inc.* (1985), 131 Ill. App. 3d 168, 475 N.E.2d 633, is misplaced. In *D & B Refuse,* this court determined an injunction to enforce an exclusive refuse hauling contract was improper where the city council of the municipality involved had never properly approved the contract. By contrast, Decatur has established a contract for refuse removal through its licensing procedure, a procedure which defendant concedes has been properly approved.

Since we have concluded defendant's arguments are without merit on the law, we do not address the issue of whether the trial court should have considered them during trial as affirmative defenses.

For the foregoing reasons, we affirm defendant's conviction for removing refuse from a district outside its license boundaries.

Affirmed.

GREEN and LUND, JJ., concur.